**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SOUHAIR KHATIB,
              *Plaintiff-Appellant,*

v.

COUNTY OF ORANGE, a political
subdivision; MICHAEL S. CARONA,
an individual; BRIAN COSSAIRT, an
individual,

              *Defendants-Appellees.*

No. 08-56423

D.C. No.
8:07-cv-01012-
DOC-MLG

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
December 13, 2010—Pasadena, California

Filed March 15, 2011

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Diarmuid F. O'Scannlain, Sidney R. Thomas,
M. Margaret McKeown, Raymond C. Fisher,
Ronald M. Gould, Johnnie B. Rawlinson, Richard R. Clifton,
Sandra S. Ikuta, and N. Randy Smith, Circuit Judges.

Opinion by Judge McKeown;
Concurrence by Judge Gould

---

**COUNSEL**

Jennifer Mathis and Becki F. Kieffer, Troutman Sanders LLP, Irvine, California; Mark D. Rosenbaum (argued) and Hector O. Villagra, ACLU Foundation of Southern California, Los Angeles, California, for the plaintiff-appellant.

David D. Lawrence (argued) and Christina M. Sprenger, Lawrence Beach Allen & Choi, PC, Santa Ana, California, for the defendants-appellees.

Conor B. Dugan (argued) and Gregory B. Friel, U.S. Department of Justice, Washington, D.C., for amicus curiae United States.

---

**OPINION**

McKEOWN, Circuit Judge:

Recognizing the significance of religious freedom in all aspects of life, Congress passed the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA" or "the Act") to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore

dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA prohibits state and local governments from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government demonstrates that imposing that burden "is the least restrictive means" of furthering "a compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The term "institution" includes "a jail, prison, or other correctional facility" and "a pretrial detention facility." 42 U.S.C. § 1997(1)(B). We consider whether the Orange County Santa Ana Courthouse holding facility, where every day hundreds of individuals are detained in connection with court proceedings, is an "institution" as defined by RLUIPA. We conclude that this facility is such an "institution" under RLUIPA, and thus the Act covers persons detained at the facility.

Our interpretation of the statute is guided by three principles. To begin, the focus of our inquiry is narrow and preliminary. The only question before us is whether Orange County's facility is an "institution" under RLUIPA; other courthouse or detention facilities have unique characteristics that warrant individualized review. Next, we are mindful that the issue of accommodation—whether the substantial burden on religious exercise is "the least restrictive means of furthering [a] compelling governmental interest"—is distinct from the threshold issue of whether the facility is a covered "institution" in the first place. 42 U.S.C. § 2000cc-1(a). The accommodation question involves serious practical considerations regarding institutional safety, security, and the feasibility of accommodation that are not before us now. Finally, Congress has explicitly directed us to resolve any ambiguities in RLUIPA "in favor of a *broad protection* of religious exercise, to the *maximum extent permitted*." 42 U.S.C. § 2000cc-3(g) (emphasis added). With this framework in mind, we turn to the background of the case.

**BACKGROUND**

Souhair Khatib is a practicing Muslim. In accordance with her religious beliefs, Khatib wears a hijab, or headscarf, covering her hair and neck when in public. Khatib and her husband pled guilty in Orange County Superior Court to a misdemeanor violation of California welfare law. The Khatibs were sentenced to three years' probation and ordered to complete thirty days of community service.

Two days before the deadline for completing their community service, Khatib and her husband appeared in Orange County Superior Court to seek an extension. The court revoked Khatib's probation and ordered her taken into custody. Khatib was handcuffed and taken to the Santa Ana Courthouse's holding facility.

At the booking counter, a male officer ordered Khatib to hand over her belongings and remove her headscarf. Having her head uncovered in public, especially in front of men outside of her immediate family, is a "serious breach of [Khatib's] faith and a deeply humiliating and defiling experience." Weeping, Khatib explained that her religious beliefs forbade her from taking off her headscarf and pleaded with the officers to allow her to keep it on. Khatib was warned that the male officers would remove the headscarf for her if she did not voluntarily do so. Wanting to avoid being touched by the male officers—another violation of her religious beliefs—Khatib reluctantly complied.

Khatib spent the majority of the day in a holding cell in view of male officers and inmates. Experiencing "severe discomfort," "distress," and "humiliat[ion]," Khatib attempted to cover herself by pulling her knees into her chest and covering her head with a vest she was wearing. At a hearing that afternoon, the court reinstated Khatib's probation and provided an extension of time to complete community service.

Khatib filed a complaint against the County of Orange, the sheriff, and courthouse officers ("the County"), alleging, among other things, violations of RLUIPA. The district court dismissed Khatib's RLUIPA claims on the ground that the courthouse holding facility was not a covered institution under the Act. The district court wrote at length about the conditions in longer-term facilities and on the difference between courthouse holding facilities and longer-term facilities such as correctional centers and prisons. The court concluded that because

> an inmate's stay in a courthouse holding facility is generally temporary and transitory, . . . constant movement within holding facilities makes unlimited exercise of religious and expressive freedoms impractical. Staff at such facilities do not have the luxuries that make such freedoms feasible in longer-term institutions, to which RLUIPA plainly applies. As a result, the Court cannot conclude that Congress intended . . . RLUIPA to apply to courthouse holding facilities.

As we explain below, this exegesis about the practicality of religious accommodation improperly merges two distinct inquiries: whether the facility is an "institution," and the government's burden as to accommodation. Only the former question is at issue in this appeal.

## ANALYSIS

### A.  RLUIPA Overview

We apply well-established legal principles of statutory interpretation. We begin, "as always," with the text of the statute. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). We presume that Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Thus, the plain mean-

ing of a statute controls where that meaning is unambiguous. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 254 (2000).

**[1]** Section 3 of RLUIPA provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, an individual must have been "residing in or confined to" a covered "institution" to invoke the protections of the Act. The key interpretive question is whether Khatib meets this criterion.

**[2]** RLUIPA incorporates by reference the definition of "institution" from the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997 *et seq.*, which defines the term to include "any facility or institution" that is "a jail, prison, or other correctional facility [or] a pretrial detention facility."[1] Under the ordinary, common meaning of these terms, the Santa Ana Courthouse holding facility falls within the definitions of "pretrial detention facility" and of

---

[1]CRIPA's legislative history is consistent with RLUIPA's broad mandate. According to the House Conference Report on CRIPA, "pretrial detention facility" is a "generic term . . . intended to cover any institution or facility which confines detainees who are awaiting or participating in criminal trials." H.R. Rep. No. 96-897, at 10 (1980) (Conf. Rep.), *reprinted in* 1980 U.S.C.C.A.N. 832, 834. The term "jail or prison or other correctional facility" is similarly broad and encompasses "those institutions in which persons are wholly or partially confined or housed as part of a criminal sanction or process." *Id.*

"jail."**[2]** *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (instructing that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning"). In reaching this conclusion, we begin with the County's own description of the facility.

## B.   The Santa Ana Courthouse Holding Facility

The best description of the Santa Ana Courthouse holding facility comes from the Orange County Grand Jury Report, an annual publication mandated by state law.**[3]** The 2006-2007 report lists the courthouse facility as one of Orange County's adult jail facilities and describes it as follows:

> COURT HOLDING FACILITY is a secure detention facility located within a court building used for the confinement of persons solely for the purpose of a court appearance for a period not exceeding 12 hours.

2006-2007 ORANGE COUNTY GRAND JURY, THE STATE OF ORANGE COUNTY JAILS AND PROGRAMS 1 (June 7, 2007) ("Grand Jury Report"). The facility is further described by the County as a "labyrinth of sub-basements, tunnel[s], secured elevators, and holding cells" through which approximately 600 inmates travel each day. *Id.* at 4. The facility holds indi-

---

**[2]**Because there is no ambiguity in the statute and the plain meaning compels our conclusion, we need not rely on RLUIPA's generous rule of construction in this case. However, to the extent there is any question as to the statute's applicability, Congress's mandate that we construe the Act in favor of "broad protection of religious exercise" to institutionalized persons serves to reinforce our analysis. 42 U.S.C. § 2000cc-3(g).

**[3]***See* Cal. Penal Code § 919(b). Khatib submitted the 2006-2007 and 2007-2008 reports to the district court, along with a request to take judicial notice. We construe the court's incorporation of the reports into its order as effectively taking judicial notice of the documents. *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (courts may take judicial notice of public reports).

viduals taken into custody at the courthouse as well as inmates who are transferred from other facilities to appear at court hearings or trial. Inmates brought into the facility are "segregated by race, gang affiliation, criminal level of intensity, and other characteristics to prevent trouble." *Id.*

## C. Whether the Facility is a "Pretrial Detention Facility"

**[3]** The Santa Ana facility easily fits within the definition of a "pretrial detention facility." Because neither RLUIPA nor CRIPA defines "pretrial detention facility," we look to the ordinary meaning of the words to define the term. *See Perrin*, 444 U.S. at 42. Detention is commonly understood as "a period of temporary custody prior to disposition by a court." *Webster's Third New International Dictionary, Unabridged* 616 (1993)*; see also Black's Law Dictionary* 514 (9th ed. 2009) ("detention" is "[t]he act or fact of holding a person in custody; confinement or compulsory delay"). The most common definition of a "pretrial detainee" is an individual who is held in custody pending adjudication of guilt or innocence. *See Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). Pretrial detention is simply the "holding of a defendant before trial on criminal charges." *Black's Law Dictionary* 514. It is thus evident that the common, ordinary meaning of a "pretrial detention facility" is precisely what that phrase suggests: a facility where individuals who are not yet convicted are held pending court proceedings. To determine whether the Santa Ana facility falls within this definition we begin with the most logical place—the County's own characterization of the facility. According to the 2006-2007 Grand Jury Report, the Santa Ana facility is "a secure *detention facility* located within a court building used for the *confinement* of persons." Grand Jury Report at 1 (emphasis added). The emphasized words in this description are an exact match to the text of RLUIPA. The facility's main purpose is to temporarily hold individuals who are awaiting court proceedings, including individuals

awaiting trial.[4] *See id.* (the facility is "for the confinement of persons solely for the purpose of a court appearance"). Our conclusion could hardly be clearer. Based on the plain meaning of a "pretrial detention facility," the Santa Ana Courthouse holding facility fits the bill. That Khatib was confined to the facility is undisputed.

[4] The County argues that RLUIPA only affords protection to inmates at long-term facilities with residential capabilities. This interpretation reads into the statute an additional qualification where none exists. The Act does not include any temporal restriction on the term "institution." Nor should we import such a requirement, especially in light of the generous interpretative rule set forth by Congress.[5] *See United States v. W.R. Grace*, 526 F.3d 499, 505 (9th Cir. 2008) (en banc) (where Congress expressly instructs that provisions of a statute shall be construed liberally, "we should not . . . read into the statute an unwritten additional hurdle, even if well intentioned"). RLUIPA plainly covers persons "residing in *or confined to* an institution." 42 U.S.C. § 2000cc-1(a) (emphasis added). Had Congress intended to cover only long-term, residential facilities, it would not have enacted a provision that

---

[4]The fact that Khatib herself was not technically a pretrial detainee because she had already been adjudicated guilty is of no import. Coverage under the statute does not hinge on the status of a particular individual or plaintiff. Rather, the statute protects the religious liberty of individuals who reside in or are confined to different types of "institutions." Khatib was without doubt "confined" to the Santa Ana Courthouse holding facility.

[5]Specifically, 42 U.S.C. § 2000cc-3(g) states that "[t]his chapter shall be construed in favor of broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." Although "this chapter" is a reference to RLUIPA, and an "institution" (i.e., a "jail, prison, or other correctional facility," or a "pretrial detention facility") is defined in CRIPA, a separate chapter, RLUIPA incorporates CRIPA by reference. The question whether the principle of construction set forth in § 2000cc-3(g) applies to statutory terms in CRIPA need not be resolved here, however, because we can resolve this case without resorting to RLUIPA's interpretative rule.

includes both "confined to" and "residing in." *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) (it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative") (quoting *Colautti v. Franklin*, 439 U.S. 379, 392 (1979)); *Duncan*, 533 U.S. at 174 ("It is our duty to give effect, if possible, to every clause and word of a statute.") (quoting *United States v. Menasche*, 348 U.S. 528, 538-539 (1955)) (internal quotation marks omitted).

The County's further argument that "pretrial detention" necessarily "lasts for a material and indefinite period of time" is not borne out in either case law or the real world. "Pretrial detention is by nature temporary," *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975), and in practice it often lasts for short periods of time, *see, e.g.*, *Way v. County of Ventura*, 445 F.3d 1157, 1158-59 (9th Cir. 2006) (defendant was arrested and held at the Ventura County "pretrial detention facility" for "several hours" before she was released on bail).

**[5]** In sum, we are unpersuaded by the County's efforts to redefine the nature of the Santa Ana facility and to insert a temporal element into the statute. Based on the plain meaning of the term "pretrial detention facility" and the Grand Jury Report, the Santa Ana facility is an "institution" under RLUIPA.

## D.   Whether the Facility is a "Jail"

**[6]** Although the Santa Ana detention facility best fits within the definition of a "pretrial detention facility," it also falls within the definition of a "jail."[6] Like the term "pretrial

---

[6]The United States appears in this appeal as an amicus curiae and, like Khatib, urges us to hold that the Santa Ana Courthouse holding facility meets the definition of *both* a "pretrial detention facility" and a "jail." In its brief, the United States underscored that "Congress intended the term 'institution' to have a broad and expansive meaning that easily encompasses the courthouse holding facility at issue in this case." Amici Br. at 9.

detention facility," because "jail" is not defined in RLUIPA or CRIPA, we turn to the dictionary. A "jail" is a "building for the confinement of persons held in lawful custody (as for minor offenses or some future judicial proceeding)." *Webster's Third New International Dictionary, Unabridged* 1208; *see also Black's Law Dictionary* 910 ("jail" is a generic term, used to describe "[a] local government's detention center where persons awaiting trial or those convicted of misdemeanors are confined").

**[7]** While RLUIPA requires us to "construe" it "in favor of broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution," 42 U.S.C. § 2000cc-3(g), we need not stretch the term "jail" in the context of the Santa Ana Courthouse holding facility. Looking yet again to the County's own description of the facility, a "secure detention facility . . . for the confinement of persons solely for the purpose of a court appearance" falls squarely within the ordinary, common definition of a "jail." Grand Jury Report at 1.

The County suggests that, in adopting an expansive definition of jail, all pretrial detention facilities would be subsumed within the statute, with wide-ranging consequences. We are not persuaded by this "sky is falling" logic. Our role is to interpret the language as written, not to speculate as to the breadth of potential coverage in a case down the road.

Under the statute, determining whether a facility is a covered institution is a question of function, not just labeling. It would not be surprising to find functionally identical facilities labeled as a jail in one jurisdiction and a pretrial detention facility in another. Nor is it inconsistent that RLUIPA employs the generic terms "jail" and "pretrial detention facility" in a flexible and somewhat overlapping manner to ensure that a broad range of custodial facilities are brought within its reach. This interpretation of RLUIPA's coverage ensures "*broad protection* of religious exercise, to the *maximum*

*extent permitted*." 42 U.S.C. § 2000cc-3(g) (emphasis added). Yet the County would have us construe RLUIPA to categorically exclude a pretrial detention facility that holds up to 600 inmates a day simply because it is located in the courthouse and the inmates are confined there for relatively short periods. We do not embrace such a restrictive interpretation in light of the plain language of the statute and the clearly expressed congressional intent.

### E.   The District Court's Ruling

**[8]** In resolving the motion to dismiss, the district court sidestepped the statutory analysis set out above, and instead focused on the obstacles the Santa Ana Courthouse facility would face in accommodating religious exercise by Khatib or any other detainee. This approach put the cart before the horse. Security and administrative concerns that could frustrate a facility's ability to accommodate religious exercise do not implicate whether that facility is an "institution." Inserting these concerns into the coverage prong of RLUIPA was error. The district court should address such concerns at summary judgment, when it considers whether the burden the County imposed on Khatib was the least restrictive means of furthering a compelling government interest. *See* 42 U.S.C. § 2000cc-1(a); *see also, e.g.*, *Greene v. Solano County Jail*, 513 F.3d 982, 988-89 (9th Cir. 2008) (addressing at summary judgment the county's argument that group worship was impracticable at a maximum security facility because the facility lacked appropriate resources to ensure safety).

**[9]** The district court also went astray when it reasoned that short-term detention facilities must be excluded from RLUIPA because short-term detainees cannot meet the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). No substantive provision of RLUIPA references the PLRA; the district court's theory has no basis in the text of the statute. Further, the PLRA only requires exhaustion of "administrative remedies *as are available*," and thus

expressly contemplates cases like Khatib's where such remedies do not exist. 42 U.S.C. § 1997e(a) (emphasis added). Finally, inventing an extra-textual limitation on RLUIPA's coverage directly contravenes Congress's instruction that judges construe the statute in favor of "broad protection of religious exercise." 42 U.S.C. § 2000cc-3(g).

## CONCLUSION

**[10]** The County's argument reduces to the claim that because the application of RLUIPA to the courthouse holding facility is impractical and inconvenient the facility must not fall within the Act's definition of "institution." But this approach conflates RLUIPA's coverage and accommodation prongs. Congress certainly had real-world consequences in mind when it enacted RLUIPA, and the text of the statute indicates that it did not intend to minimize the serious security and other management interests of institutions. It chose, however, to deal with accommodation issues as a second step in the analysis, not by categorically excluding facilities like the Santa Ana Courthouse holding facility from RLUIPA.

The County's argument will not go unaddressed. RLUIPA tasks courts with deciding, on a case-by-case basis, whether the particular restrictions an institution imposes on the religious liberty of its inmates are justified. *See* 42 U.S.C. § 2000cc-1(a). Given the diversity of courthouse holding facilities and inmate religious practices, such tailored adjudication accommodates the balance of religious freedom and institutional order. As the Supreme Court wrote in *Cutter*, "[s]hould inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." 544 U.S. at 726. But, more importantly, regardless of what we judges think, we are bound by the unambiguous lan-

guage of the statute. RLUIPA plainly covers the Santa Ana Courthouse holding facility.[7]

**REVERSED AND REMANDED**.

GOULD, Circuit Judge, concurring:

I concur. I agree with Judge McKeown's opinion that the Orange County Santa Ana Courthouse holding facility is a "jail, prison or other correctional facility," or "a pretrial detention facility," within the meaning of 42 U.S.C. § 1997(1). And I agree that if RLUIPA's statutory coverage is invoked, then the state still has the opportunity to justify restrictions that further a compelling governmental interest using the least restrictive means and that technically that issue is not now before us. 42 U.S.C. 2000cc-1(a). However, I write separately to emphasize an additional factor supporting our decision that RLUIPA covers the Santa Ana facility.

In deciding the issue of coverage, we should not lose sight of the reality that if RLUIPA does not apply, a Muslim woman in custody loses an important statutory protection for her religious preference to wear a hijab, a traditional headscarf—a preference that Congress aimed to protect. It is commonplace, and has been for centuries, to interpret ambiguities in remedial statutes by considering three points: "the old law, the mischief, and the remedy." 1 William Blackstone, Commentaries *87. We are to consider the preexisting state of the law and what "mischief" Congress intended to remedy when it enacted the remedial statute. "And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy." *Id. See also Nix v. James*,

---

[7]On appeal, Khatib also argues that the district court improperly converted the County's motion to dismiss into a motion for summary judgment. In light of our decision, we need not address this issue.

7 F.2d 590 (9th Cir. 1925) (holding that a remedial statute is "entitled to a liberal construction"). When "words are dubious" and the meaning of a statute seems unclear, we may consider the "*reason* and *spirit*" of the law. Blackstone at \*60-61. Such an approach is consistent with RLUIPA's explicit command that we construe the statute "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).

Doubtless Congress intended to safeguard the permissible religious observance of powerless persons incarcerated by the state. The legislative history of RLUIPA indicates that Congress, in reaction to the Supreme Court's decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997), sought to restore where constitutionally permissible the protections of the partially invalidated Religious Freedom Restoration Act ("RFRA"). H.R. Rep. No. 106-219, at 5-12 (1999). Congress heard testimony describing government facilities that regularly denied individuals the right to exercise their religion. That testimony included many examples of government facilities that refused to accommodate religious practices, like wearing religious headwear or eating a kosher diet, until those facilities were "advised of the possibility of a lawsuit under RFRA." *Id.* at 10. This type of government restriction of religious observance "is the mischief which gives understanding of the remedy." *People v. Westchester Cnty Nat'l Bank of Peekskill, N.Y.*, 132 N.E. 241, (N.Y. 1921) (Cardozo, J., dissenting). It is clear from the legislative history that Congress intended to reinstate RFRA's protections against such restrictions when it passed RLUIPA.

A Muslim woman who must appear before strange men she doesn't know, with her hair and neck uncovered in a violation of her religious beliefs, may feel shame and distress. This is precisely the kind of "mischief" RLUIPA was intended to remedy. A recognition of this very real harm helps inform our judgment on the scope of covered institutions. Under long-

observed canons of statutory construction, and under the terms of RLUIPA itself, it is proper to construe the statute broadly to give effect to the religious protection intended by Congress.