**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTRO FAMILIAR CRISTIANO
BUENAS NUEVAS and JORGE
OROZCO, Pastor,
          *Plaintiffs-Appellants,*

          v.

CITY OF YUMA,
          *Defendant-Appellee.*

No. 09-15422

D.C. No.
2:08-cv-00996-
NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
April 15, 2010—San Francisco, California

Filed July 12, 2011

Before: Andrew J. Kleinfeld, A. Wallace Tashima and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Kleinfeld

9357

## COUNSEL

Byron J. Babione, Alliance Defense Fund, Scottsdale, Arizona, for the appellants.

Ronald W. Messerly, Snell & Wilmer, Phoenix, Arizona, for the appellee.

Christopher C. Wang, United States Department of Justice, Appellate Section, Civil Rights Division, Washington, D.C., for the amicus curiae.

## OPINION

KLEINFELD, Circuit Judge:

We address the "equal terms" provision of the Religious Land Use and Institutionalized Persons Act (RLUIPA).[1]

## I.  Facts

Centro Familiar Cristiano Buenas Nuevas, founded in 1998, is a Christian congregation of around 250 members, associated with the Arizona Southern Baptist Convention. The church sued for a declaratory judgment, injunction, and damages, when the City of Yuma prevented it from conducting church services in a building it had bought for that purpose.

The parties agreed to consolidate the preliminary injunction hearing with trial on the merits, and stipulated to many of the

---

[1] 42 U.S.C. §§ 2000cc.

facts. No facts are at issue on appeal. We describe the facts in accord with the trial judge's findings of fact. This is a sort of reverse urban blight case, with the twist that instead of bars and nightclubs being treated as blighting their more genteel environs, the church is treated as blighting the bar and night-club district.

The City of Yuma, through the 1990s, tried to revive its Old Town Main Street area as a tourist district. The city decided to salt Main Street with a "mixture of commercial, cultural, governmental, and residential uses that will help to ensure a lively pedestrian-oriented district." The three-block Main Street area included a large, vacant building that had been a J. C. Penney department store from 1952 to 1976, then declined into factory and warehouse space for garment manu-facturers, then a temporary facility for a bakery in 1998, and then a vacant hulk. The church bought the building in 2007.

The church had been looking for space because the half of a former movie theater it had been renting was inadequate. It bought the old J. C. Penney store because it was cheap, and because the municipality did not impose parking requirements on Main Street. The old vacant store, with a big public park-ing lot in back, was in foreclosure, and had to be purchased fast in order to get the distress sale price. The city told the church that it would need a conditional use permit to hold church services there, but the owner of the building was not willing to hold off on selling while the permit was sought, so the church had to buy knowing that the permit might be denied.

Some owners of neighboring properties objected to a per-mit on various grounds. A major concern was that a church would prevent issuance of liquor licenses, because state law prohibited new bars, nightclubs, or liquor stores within 300 feet of a church.[2] The Community Planning Staff of the City

---

[2]Ariz. Rev. Stat. § 4-207(A) (2000). The subsection states:

A retailer's license shall not be issued for any premises which

of Yuma prepared a report for the City Planning and Zoning Commission recommending denial of a conditional use permit. The report noted positive features of granting the permit, such as "rehabilitation of a deteriorated and long-vacant building in the Old Town District." But, the staff concluded, use of the building as a church would be inconsistent with a "24/7 downtown neighborhood involving retail, residential, office and entertainment." The liquor license problem was the "pivotal factor."[3] The city wanted the three-block Main Street to be an entertainment district, and the state prohibition on liquor licenses for bars, nightclubs, and liquor stores within 300 feet of it would blight a whole block for purposes of an entertainment district. The Commission accordingly denied the conditional use permit.

Had Centro Familiar been a secular organization rather than a church, it would not have needed the conditional use permit. The Yuma City Code requires religious organizations,[4] (and schools,[5] which also have the effect of preventing issuance of

---

are, at the time the license application is received by the director, within three hundred horizontal feet of a church, within three hundred horizontal feet of a public or private school building with kindergarten programs or any of grades one through twelve or within three hundred horizontal feet of a fenced recreational area adjacent to such school building. This section does not prohibit the renewal of a valid license issued pursuant to this title if, on the date that the original application for the license is filed, the premises were not within three hundred horizontal feet of a church, within three hundred horizontal feet of a public or private school building . . . .

Subsection B of Section 4-207 clarifies that the restrictions do not apply to a restaurant, special event license, hotel-motel, government license, or fenced playing area of a golf course. Ariz. Rev. Stat. § 4-207(B) (2000).

[3]*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 615 F. Supp. 2d 980, 1000 (D. Ariz. 2009).

[4]Yuma City Code § 154-188(F) ("Religious organizations") (2008).

[5]*Id.* § 154-188(D) ("Educational Services") (2008).

liquor licenses within 300 feet) to obtain a conditional use permit (CUP) to operate in the Old Town District, but "Membership organizations (except religious organizations (SIC 86))"[6] may operate in Old Town without a permit.[7] Many uses, not just membership organizations and entertainment venues, may operate without a conditional use permit. Auditoriums, performing art centers, and physical fitness facilities; museums, art galleries, and botanical and zoological gardens; single- and multiple-family dwellings; and even jails and prisons may operate in Old Town and on Main Street as of right.

Centro Familiar sued for a declaratory judgment invalidating the City Code provision subjecting churches but not secular membership organizations to conditional use permits, an injunction to require issuance of the permit, and damages for the financial consequences to the church of the denial. The district court concluded that the different treatment of churches did not violate the Religious Land Use and Institutionalized Persons Act (RLUIPA) or other provisions of law, and entered judgment for the city.[8]

Two subsequent events have changed the circumstances of the case. First, while this appeal was pending, the church lost the property to foreclosure. Second, Arizona passed a state version of RLUIPA, a state statute very similar to the federal

---

[6]"SIC" stands for "Standard Industrial Classification," described in Yuma's 2010 City Code as a "statistical classification standard underlying all establishment-based federal economic statistics classified by industry, published by the Executive Office of the President, Office of Management and Budget. The classification covers the entire field of economic activities and defines industries in accordance with the composition and structure of the economy." *See* Yuma City Code § 154-01.07 ("Definitions.") (2010). The SIC Manual is available on the U.S. Department of Labor's website at http://www.osha.gov/pls/imis/sic_manual.html.

[7]Yuma City Code § 154-187(XX) ("Membership organizations (except religious organizations)") (2008).

[8]*See Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 615 F. Supp. 2d 980 (D. Ariz. 2009).

statute.[9] Arizona also changed the statutory ban on liquor licenses within 300 feet of a church, allowing for waiver.[10] We withdrew this case from submission so that counsel could address the effect of the changed law. Counsel for the church filed a letter brief addressing the foreclosure, and both sides filed subsequent supplemental briefs on the effect of the new statutes.

## II.  Analysis

Centro Familiar argues that the Religious Land Use and Institutionalized Persons Act (RLUIPA) is not a mere restatement of the Free Exercise Clause, that requiring a conditional use permit for churches but not other organizations violates RLUIPA, and that even if RLUIPA were a mere codification of the Free Exercise Clause, the City Code would violate that as well. The United States has filed an amicus curiae brief in support of the church, though not agreeing with it on all points.

### A.  Mootness.

[1] The claims for declaratory judgment and injunction are moot. The church no longer owns the old J. C. Penney store building, so the city could not be required to issue a conditional use permit for the building to the church. Nor could the church be entitled to a declaration that a code provision and statute violate federal law, because they no longer affect the church. The dispute does not fall within the "capable of repetition, yet evading review" exception,[11] both because the stat-

---

[9]Ariz. Rev. Stat. § 41-1493.03 (2010).

[10]Ariz. Rev. Stat. § 4-207(C)(4) (2010). This subsection allows a city such as Yuma, with a population of less than 200,000, to designate one "entertainment district" within its boundaries, and approve exemptions from the distance restrictions on a case-by-case basis within that district.

[11]*Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1159-60 (9th Cir. 2011).

ute now allows for waiver of the liquor license restriction, and because there is no reason to suppose that any similar subsequent denial would be unreviewable.

**[2]** The damages claim, though, is not moot. The complaint seeks compensatory damages "for the Church's monetary expenses incurred as a result of the City's" permit denial. The letter brief claims that the permit denial forced the church to pay for two facilities for two years, one check for the J. C. Penney building that it could not use, and another for a facility in which to hold services, and the church lost the property because it could not afford to pay for two facilities in order to use one.

Although the Commission might have granted the permit under the new statute enabling the city to waive the 300-foot liquor license ban, that statute was not retroactive[12] and had no effect on the actual occurrences. The ban was not waived, the church was stuck paying for a building it could not use, and consequently, according to its representations, it wasted the money and lost its building.

**[3]** RLUIPA does not say in so many words that a successful plaintiff can obtain damages, but the city does not contest that one can. If damages were not allowable, then mootness of the declaratory judgment and injunction claims would moot out the entire case. RLUIPA states that a successful plaintiff may "obtain appropriate relief against a government."[13] The

---

[12]In 2010, Arizona enacted its own version of RLUIPA, Ariz. Rev. Stat. § 41-1493.03, and amended the 300-foot ban to allow municipal waivers, Ariz. Rev. Stat. § 4-207(C)(4). Under Arizona law, however, no statute is retroactive "unless expressly declared therein." Ariz. Rev. Stat. § 1-244; *see also Garcia v. Browning*, 151 P.3d 533, 535 (Ariz. 2007), *superseded by statute on other grounds as recognized in State v. Rios*, 237 P.3d 1052, 1054 (Ariz. 2010). There is no statement of retroactivity in the amending bill, Chapter 323 of the 2010 Arizona Session Laws. We therefore must decide this case under RLUIPA as applied to the Arizona statutes and code provisions in effect at the times of the events at issue.

[13]42 U.S.C. § 2000cc-2(1).

statute defines "government" to include both states and munici-palities,[14] giving rise to an Eleventh Amendment question. The question has been answered in two Supreme Court deci-sions.

[4] *Franklin v. Gwinnett County Public Schools*[15] holds that federal courts may award monetary damages against municipal entities, absent clear statutory indication to the con-trary.[16] *Franklin* uses the phrasing, used in RLUIPA, "appro-priate relief." RLUIPA both uses the "appropriate relief" language and speaks without any "clear direction" excluding damages relief, so under *Franklin*, municipalities are liable for monetary damages for violations of RLUIPA.[17]

[5] *Sossamon v. Texas* holds that states may not be held liable for monetary damages under RLUIPA because they have not waived sovereign immunity.[18] *Sossamon* is grounded on the line of Eleventh Amendment authority requiring "clear expression"[19] to abrogate the sovereign immunity of states from damages claims.[20] The Eleventh Amendment require-ment does not apply to municipalities.[21] The City of Yuma,

---

[14]42 U.S.C. § 2000cc-5(4).

[15]*Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60 (1992).

[16]*See also Sossamon v. Texas*, 131 S. Ct. 1651, 1658-59 (2011).

[17]Other circuits have allowed monetary damages against municipalities under RLUIPA. *See, e.g.*, *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260-61, 273 (3d Cir. 2007).

[18]*Sossamon v. Texas*, 131 S.Ct. 1651 (2011).

[19]*Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 852 (9th Cir. 2001), *aff'd*, *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003).

[20]*See also Alaska v. EEOC*, 564 F.3d 1062, 1066 (9th Cir. 2009) ("Congress may abrogate this immunity in certain circumstances. To determine when it has validly done so, we must 'resolve two predicate questions: . . . whether Congress unequivocally expressed its intent to abrogate' and, if so, 'whether Congress acted pursuant to a valid grant of constitutional authority.' " (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)) (alteration in the original)).

[21]*Id.* at 1085-86 ("political subdivisions of states, such as counties and municipalities . . . are not shielded by sovereign immunity") (citing *N. Ins. Co. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006)).

therefore, may be liable for monetary damages under RLUIPA, if plaintiffs prove a violation and damages.

## B.   RLUIPA.

The facts are not at issue. We review the legal conclusions of the district court de novo.[22]

RLUIPA has two separate provisions limiting government regulation of land use. One prohibits governments from implementing land use regulations that impose "a substantial burden" on religious exercise unless the government demonstrates that they further a "compelling governmental interest" by the "least restrictive means."[23] That "substantial burden" provision is not at issue here.

**[6]** The second RLUIPA land use provision prohibits a government from imposing a land use restriction on a religious assembly "on less than equal terms" with a nonreligious assembly.[24] This "equal terms" provision is the one before us.

---

[22]*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1067 (9th Cir. 2008) (en banc).

[23]42 U.S.C. § 2000cc(a).

[24]The second land use provision, on "Discrimination and exclusion," includes more than the "equal terms" provision. It says in full that:

**(1) Equal terms**

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

**(2) Nondiscrimination**

No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

**(3) Exclusions and limits**

No government shall impose or implement a land use regulation that—

We have not had occasion to construe it.[25]

---

    (A) totally excludes religious assemblies from a jurisdiction; or

    (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

42 U.S.C. § 2000cc(b).

We need not reach the "nondiscrimination" and "exclusions and limits" provisions in this case.

[25]Six other circuits have applied and interpreted the equal terms provision, dividing roughly into two camps. The Eleventh Circuit in *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004), held that a statute or zoning ordinance that facially differentiates between religious and nonreligious assemblies or institutions violates the equal terms provision. The statute or regulation must then undergo strict scrutiny to see if it should be upheld despite the violation. The Third Circuit in *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3d Cir. 2007), held instead that a plaintiff must identify a similarly situated secular assembly or institution with respect to the goal of the regulation, and compare the religious assembly's treatment to that of the similarly situated secular comparator. The Seventh Circuit sitting en banc in *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois*, 611 F.3d 367 (7th Cir. 2010) (en banc) adopted a variation on the Third Circuit's approach: there must be a similarly situated comparator with respect to an accepted "regulatory criteria," such as "commercial district" or "residential district" or "industrial district," not the Third Circuit's "regulatory purpose."

The Tenth and Sixth Circuits did not need to decide between the circuits, since *Rocky Mountain Christian Church v. Board of County Commissioners*, 613 F.3d 1229 (10th Cir. 2010), and *Third Church of Christ v. City of New York*, 626 F.3d 667 (2d Cir. 2010), were as-applied, not facial, challenges to an ordinance.

The Fifth Circuit, in *Elijah Group, Inc. v. City of Leon Valley*, ___ F.3d ___, 2011 WL 2295215 (5th Cir. 2011), recently held that a city ordinance violated the equal terms provision, without explicitly adopting any of the above tests. The Fifth Circuit explained that a church must show "more than simply that its religious use is forbidden and some other nonreligious use is permitted," because the equal terms provision "must be measured by the ordinance itself and the criteria by which it treats institutions differently." *Id.* at *4.

We decided a Sikh temple case under the "substantial burden" provision in *Guru Nanak Sikh Society v. County of Sutter*.[26] We laid out the history of RLUIPA, that Congress promulgated RLUIPA after *City of Boerne v. Flores*[27] had invalidated the Religious Freedom Restoration Act of 1993 (RFRA). RLUIPA's purpose was to address what Congress perceived as inappropriate restrictions on religious land uses, especially by "unwanted" and "newcomer" religious groups.[28] We held that the "substantial burden" portion of RLUIPA (unlike RFRA) "is constitutional because it addresses documented, unconstitutional government actions in a proportional manner."[29]

We reversed a summary judgment against a church, and held that the church had established enough to get to trial under the "substantial burden" provision, in *International Church of the Foursquare Gospel v. City of San Leandro*.[30] Because we reversed under the "substantial burden" provision, we expressly did not address the "equal terms" provision in *Foursquare Gospel*.[31] Now we do.

[7] The statutory text of the equal terms provision says:

> No government shall impose or implement a land use regulation in a manner that treats a religious

---

[26]*Guru Nanak Sikh Soc'y v. Cnty. of Sutter*, 456 F.3d 978 (9th Cir. 2006).

[27]*City of Boerne v. Flores*, 521 U.S. 507 (1997).

[28]*Guru Nanak Sikh Soc.*, 456 F.3d at 994.

[29]*Id.* at 993. The Supreme Court confirmed that Section 3 of RLUIPA, concerning institutionalized persons, is constitutional. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2004).

[30]*Int'l Church of the Foursquare Gospel v. City of San Leandro*, ___ F.3d ___, 2011 WL 1518980 (9th Cir. 2011).

[31]*Id.* at *1 n.1.

> assembly or institution on less than equal terms with a nonreligious assembly or institution.[32]

Most of the elements of the prohibition are not at issue: (1) there must be an imposition or implementation of a land-use regulation, (2) by a government, (3) on a religious assembly or institution. The challenge here is to an imposition by the ordinance itself, not to implementation of a facially nondiscriminatory ordinance, so we need not construe the "implement" term. What is at issue is the fourth element, that the imposition be "on less than equal terms with a nonreligious assembly or institution."

**[8]** The Old Town District portion of the Yuma City Code says that "religious organizations" are permitted only upon the granting of a conditional use permit, but numerous other uses are permitted as of right, and do not need a conditional use permit. The uses permitted as of right include several uses that would seem to put a damper on entertainment, such as "correction centers,"[33] or create a dead block uninteresting to tourists and locals seeking "lively" entertainment, such as "multiple-family dwellings."[34] Speaking to membership organizations specifically, the ordinance allows as of right, without a conditional use permit, "membership organizations (except religious organizations (SIC 86))."[35] It is hard to see how an express exclusion of "religious organizations" from uses permitted as of right by other "membership organizations" could be other than "less than equal terms" for religious organizations.

---

[32]42 U.S.C. § 2000cc(b)(1).

[33]Yuma City Code § 154-187(GGG) ("Correction centers") (2008).

[34]*Id.* § 154-187(CCC) ("Multiple-family dwellings") (2008).

[35]*Id.* § 154-187(XX) ("Membership organizations (except religious organizations (SIC 86))") (2008). "SIC 86" refers to "Standard Industrial Classification 86," which includes business associations, professional membership organizations, labor unions, civic associations, social associations, fraternal associations, political organizations, and others. *Available at* http://www.osha.gov/pls/imis/sic_manual.html.

**[9]** The statute imposes the burden of persuasion on the government, not the religious institution, once the religious institution establishes a prima facie case:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.[36]

It is undisputed that Centro Familiar is a religious institution, and the express distinction drawn by the ordinance establishes a prima facie case for unequal treatment.

**[10]** The statute does not provide for "strict scrutiny" of a "compelling governmental interest" to see if the government can excuse the equal terms violation.[37] The Constitutional phrases, "substantial burden," "compelling governmental interest," and "least restrictive means," are all included in the "substantial burden" provision,[38] not the "equal terms" provision.[39] The statutory burden of proof provision speaks to all parts of the statute, and also the Free Exercise Clause of the Constitution.[40] It does not impose new language into any pro-

---

[36]42 U.S.C. § 2000cc-2(b).

[37]We recognize that the Eleventh Circuit does read the "strict scrutiny" provisions from the substantial burden subsection into the separate equal terms subsection, but we do not agree. *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1232 (11th Cir. 2004) ("a violation of § (b)'s equal treatment provision, consistent with the analysis employed in *Lukumi*, must undergo strict scrutiny").

[38]42 U.S.C. § 2000cc(a)(1).

[39]42 U.S.C. § 2000cc(b)(1).

[40]42 U.S.C. § 2000cc-2(b).

visions of the statute. The equal terms provision does not use language from the Free Exercise Clause, or otherwise support the conclusion that Congress meant merely to meaninglessly say "the Constitution applies to land use provisions."

[11] Congress expressly provided for broad construction "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter."[41] Both because the language of the equal terms provision does not allow for it, and because it would violate the "broad construction" provision, we cannot accept the notion that a "compelling governmental interest" is an exception to the equal terms provision, or that the church has the burden of proving a "substantial burden" under the equal terms provision.

That is not to say that anything allowable for any institution has to be allowed for a church under the equal terms provision. The Third Circuit gave the example that when a town allows a ten-member book club, it would also have to permit a 1000-member church.[42] This is not the case, but the reason why is not the "substantial burden" and "compelling government interest" test. That test is for the "substantial burden" subsection, not the "equal terms" subsection. The reason is that a 1000-member church is not equal, for land-use purposes, to a ten-member book club.

[12] Under the equal terms provision, analysis should focus on what "equal" means in the context. Equality is always with respect to a characteristic that may or may not be material. For example, one can legitimately treat a tall person

---

[41]42 U.S.C. § 2000cc-3(g). *See also Khatib v. County of Orange*, 639 F.3d 898, 904 (9th Cir. 2011) (en banc) ("where Congress expressly instructs that provisions of a statute shall be construed liberally, 'we should not . . . read into the statute an unwritten additional hurdle, even if well intentioned' " (quoting *United States v. W.R. Grace*, 526 F.3d 499, 505 (9th Cir. 2008) (en banc))); *id.* at 900-01.

[42]*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 268 (3d Cir. 2007).

differently from a short person for the purposes of picking a basketball team, but not for the purposes of picking a jury. Likewise, a ten-member book club is equal to a ten-member church for purposes of parking burdens on a street, but unequal to a 1000-member church. Equality, "except when used of mathematical or scientific relations, signifies not equivalence or identity, but proper relation to relevant concerns."[43] Thus, an ordinance that allowed membership organizations below some size would not have to allow churches substantially above that size, if parking were a relevant concern.

The city may be able to justify some distinctions drawn with respect to churches, if it can demonstrate that the less-than-equal-terms are on account of a legitimate regulatory purpose, not the fact that the institution is religious in nature. In this respect, our analysis is about the same as the Third Circuit's: we look to see if the church is "similarly situated as to the regulatory purpose."[44] The Seventh Circuit, en banc, has refined this test to avoid inappropriate subjectivity by requiring equality with respect to "accepted zoning criteria," such as parking, vehicular traffic, and generation of tax revenue.[45] That refinement is appropriate where necessary to prevent evasion of the statutory requirement, though it makes no practical difference in this case.[46]

[13] The city violates the equal terms provision only when a church is treated on a less than equal basis with a secular comparator, similarly situated with respect to an accepted zoning criteria. The burden is not on the church to show a

---

[43]*River of Life Kingdom Ministries v. Village of Hazel Crest*, 611 F.3d 367, 371 (7th Cir. 2010) (en banc).

[44]*See Lighthouse Inst.*, 510 F.3d at 266.

[45]*River of Life Kingdom Ministries*, 611 F.3d at 373.

[46]As Judge Cudahy's concurrence points out, there is "little real contrast in basic approach or result between the Third Circuit and the [Seventh Circuit] majority analysis". *Id.* at 374 (Cudahy, J., concurring).

similarly situated secular assembly, but on the city to show that the treatment received by the church should not be deemed unequal, where it appears to be unequal on the face of the ordinance.[47]

[14] In this case, no "accepted zoning criteria" justifies the exception of religious organizations in the "as of right" ordinance provision, "Membership organizations (except religious organizations (SIC 86))." The City Code does not address vehicular traffic or parking needs, as a neutral restriction on the size of membership organizations might. It does not address generation of tax revenue, since it allows all sorts of non-taxpayers to operate as of right, such as the United States Postal Service,[48] museums, and zoos.[49] The church exception does not address the "street of fun"[50] criterion, since the city allows jails and prisons to operate on the three-block Old Town Main Street.[51]

[15] The only criterion that may justify the exception for churches is the damper they put on liquor licenses for bars and nightclubs. Schools, which also invoke the damper, are also required to have conditional use permits before they oper-

---

[47]*See* 42 U.S.C. § 2000cc-2(b). We here depart from the Third Circuit's analysis. *See Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 270 (3d Cir. 2007) (explaining that a plaintiff "must show (1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance"). As explained above, Section 2000cc-2(b) imposes the burden of persuasion on the government, once the plaintiff establishes a prima facie case.

[48]Yuma City Code § 154-187(F) ("United States Postal Service (SIC 431)") (2008).

[49]*Id.* § 154-187(WW) ("Museums, art galleries, and botanical and zoological gardens (SIC 84)") (2008).

[50]*See River of Life Kingdom Ministries*, 611 F.3d at 368-69.

[51]Yuma City Code § 154-187(GGG) ("Correction centers") (2008).

ate.**52** However, there are three reasons that, taken together, explain why the 300-foot restriction on liquor licenses does not vitiate the inequality.

**[16]** First, the language of the City Code says "religious organizations,"**53** not "uses which would impair issuance of liquor licenses." The ordinance gives no indication that schools and churches are being treated similarly for the same reason. The limitation on educational institutions is in a separate section, not the one establishing the unequal treatment of religious groups. The provision creating the inequality says that "Membership organizations (except religious organizations) (SIC 86)" may operate as of right. It does not say "membership organizations, except religious and educational organizations."

**[17]** Second, the ordinance's exception is too broad to be explained away by the liquor license restriction. It excludes not only churches, but also religious organizations that are not churches. Religious organizations that are not "churches" do not cause the 300-foot restriction on liquor licenses to operate, but are nevertheless required to obtain a conditional use permit. The Arizona statute defines a "church" as "a building which is erected or converted for use as a church, where services are regularly convened, which is used primarily for religious worship and schooling and which a reasonable person would conclude is a church by reason of design, signs or architectural or other features."**54** To be considered a church under the Arizona statute, a building must appear to be a church because of its architecture, and the group occupying it must regularly convene services there. The Yuma City Code's definition of "religious organizations" covers more than just visibly identifiable churches in which services are regularly

---

**52***Id.* § 154-188(D) ("Educational Services (SIC 82)") (2008).

**53***Id.* § 154-187(XX) ("Membership organizations (except religious organizations (SIC 86))") (2008)

**54**Ariz. Rev. Stat. § 4-207(D) (2000).

held. "Religious organizations (SIC 8661)" include "religious organizations operated for worship, religious training or study, government or administration of an organized religion, or for promotion of religious activities."[55]

[18] An advertising agency is allowed in Old Town as of right,[56] but not if it promotes religion. The heads of a fraternal lodge or a merchants' association could have a permanent meeting room in Old Town, but the heads of a religious group could not, even though this would not bring into effect the 300-foot restriction on liquor licenses for bars if the meeting room is not in a church. An office building could administer a restaurant chain, but could not host a chapel, even though the office building is not a church. The exclusion of religious organizations is too broad for the liquor license statute to explain it away, because it excludes religious uses other than churches.

The exclusion of "educational services" from use as of right similarly indicates that the ordinance was not written with the liquor license restriction in mind. Only schools serving kindergarten through twelfth grade throw a wet blanket on liquor licenses,[57] but the City Code also excludes colleges, universities, professional schools, and libraries.[58] And the exception disallowing religious organizations from operating as of right pertains regardless of whether the statute allows waiver of the liquor license restriction, as it did not when this case arose, but does now.

---

[55]Standard Industrial Classification 8661, *available at* http://www.osha.gov/pls/imis/sic_manual.html.

[56]Yuma City Code § 154-187(GG) ("Advertising agencies (SIC 7311)") (2008).

[57]Ariz. Rev. Stat. § 4-207(A) (2000).

[58]Yuma City Code § 154-187(D) ("Educational services (SIC 82)") (2008). Standard Industrial Classification 82 includes SIC 8221 ("Colleges, Universities, and Professional Schools"), and SIC 8231 ("Libraries"), among others. *Available at* http://www.osha.gov/pls/imis/sic_manual.html.

Third, many of the uses permitted as of right would have the same practical effect as a church of blighting a potential block of bars and nightclubs.[59] An apartment building taking up the whole block may be developed as of right, and so may a post office or prison. Prisons have bars, but not the kind promoting "entertainment."

**[19]** Thus the ordinance before us expressly treats religious organizations on a less than equal basis. In order to excuse facial treatment of a church on "less than equal terms," the land-use regulation must be reasonably well adapted to "accepted zoning criteria," even though "strict scrutiny" in a Constitutional sense is not required. The Yuma City Code's exclusion of religious organizations is not reasonably well adapted to the zoning criteria it is purported to serve. And it therefore violates the equal terms provision of RLUIPA.[60]

**[20]** Because Yuma requires religious assemblies to obtain a conditional use permit, and does not require similarly situated secular membership assemblies to do the same, it violates RLUIPA's equal terms provision. Because it does, we need not reach Centro Familiar's argument that the ordinance violates the Free Exercise Clause.

### III.   Conclusion

Because the Yuma City Code violates the equal terms provision, we reverse. On remand, the district court shall proceed as appropriate to adjudicate Centro Familiar's claim to damages.

**REVERSED** and **REMANDED.**

---

[59]*See River of Life Kingdom Minst. v. Hazel Crest, Ill.*, 611 F.3d 367, 374 (7th Cir. 2010) (en banc) ("should a municipality create what purports to be a pure commercial district and then allow other uses, a church would have an easy victory if the municipality kept it out").

[60]42 U.S.C. § 2000cc(b)(1).