# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 20, 2024

Lyle W. Cayce
Clerk

————————

No. 23-10656

————————

Arms of Hope, *a Texas Nonprofit Corporation*,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

City of Mansfield, Texas, *a Municipal Corporation*,

*Defendant—Appellant/Cross-Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-131

———————————————————————

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

In 2023, the City of Mansfield, Texas, enacted a new set of ordinances regulating Unattended Donation Boxes (UDBs).  Shortly thereafter, the city threatened enforcement against Arms of Hope ("AOH"), a charitable organization with three ordinance-violating UDBs.  AOH preemptively sued, alleging the ordinances infringed its First Amendment rights.  The district court found AOH likely to succeed on the merits of its claim and preliminarily enjoined the city's enforcement of the ordinances against AOH.

The city filed an interlocutory appeal, and AOH cross-appealed the

court's reasoning. But in early 2024, after the parties filed their briefs on appeal, the city enacted two new ordinances ameliorating many of the district court's narrow-tailoring concerns and reworking the UDB permitting process. Those ordinances also repealed the 2023 ordinances to the degree they conflicted.

The parties contend that the new ordinances do not moot the case, and we agree. But they have appealed only the injunction against enforcement of the 2023 ordinances. Those ordinances no longer have any effect, meaning the injunction no longer has any effect. So we dismiss the appeal and cross-appeal (as distinguished from the underlying case) as moot.

## I.

### A. The 2023 Ordinances[1]

After noticing an uptick in UDBs that "contributed to visual clutter," "blight due to graffiti and poor maintenance, and the accumulation of debris and excess items outside of the collection boxes," the city enacted two new ordinances regulating such boxes—OR-2287-23 and OR-2288-23.[2] Together, the ordinances created a complicated permitting scheme for every UDB.

The UDB operator began its application process by ascertaining whether the UDB needed a specific use permit. Mansfield Code of Ordinances § 116.02(A).

To answer that question, the operator determined whether the UDB was the "Primary Use" of the land. If so, the operator looked to § 155.054(b)

---

[1] We offer the following understanding of the 2023 ordinances' interplay solely for the sake of showing that the 2024 ordinances almost entirely replaced the 2023 ordinances.

[2] According to the city, many of those boxes sat in required parking spaces, landscape buffer areas, and open spaces, and in or near residential zoning districts, often without the property owner's permission.

and its Permitted Use Table. Donation Boxes were listed under "Permitted Primary Use D.10 (Commercial and Warehouse Uses)," and the operator would find that UDBs were allowed in six of the twenty Zoning Districts—zero of thirteen residential districts and six of seven nonresidential districts. In one of those six, the industrial zone I-2, the operator could make the UDB the primary use of the land "as a use of right." *Id.* § 155.054(B)(1). In the five other nonresidential zones, the operator had to obtain a Specific Use Permit. *Id.* § 155.054(B)(2).

If the operator needed a Specific Use Permit, it applied to the city's Planning Department. *Id.* § 155.080(C). The ordinances used discretionary "may issue" language for review of those applications, instructing that the Department "shall . . . issue[]" a Specific Use Permit "only if all of the [specified] conditions have been found." *Id.* § 155.080(F).

After obtaining a Specific Use Permit—or determining it did not need one—the operator could then apply for a Donation Box Permit. An operator needed a separate permit "for each donation box located in the City." *Id.* § 116.02(B). Any changes in ownership of the box required "a new Donation Box Permit prior to the change in operation." *Id.* § 116.02(A)(5). For each donation box permit application, the city charged a $100 fee.

In that application, the UDB operator had to

1. include the notarized signature of the property owner for the property on which the UDB was to be placed, *id.* § 116.02(C); and
2. provide a "service plan" detailing—at minimum—the number of times per week the operator would pick up the donated items (at least once), the time of day of each pickup, the "vehicular circulation plan[,] and a graffiti and litter abatement plan." *Id.* § 116.02(F).

Further, the operator needed to ensure that it would place the UDB in one of

No. 23-10656

the few approved locations:[3]

1. If the UDB would be an "accessory use"[4] on the land:
    a. the land had to be already in use as a "place[] of worship, nonprofit organization[], [or] school[],"
    b. the plot had to be in one of nine of Mansfield's twenty Zoning Districts,[5] and
    c. the property owner had to have provided "written consent." Mansfield Code of Ordinances § 155.099(4)(a).[6]
2. Regardless of whether the UDB would be the land's accessory or primary use, the city would only issue a UDB Donation Box Permit if the UDB would:
    a. Be the only UDB on the lot. *Id.* § 155.099(B)(40)(b)(1).
    b. Sit more than 250 feet away from the nearest already-permitted UDB, 500 feet from any of the major roads and highways in Mansfield, and "250 linear feet [from] any residence, hospital daycare center, or public or private school or college by right; or . . . 250 linear feet [from] parks and recreational facilities." *Id.* § 155.099(B)(40)(b)(2).
    c. Rest "on a paved surface," not "in any parking space, aisle or loading dock and service area" nor "within any required landscape buffers" or "designated open space, community space, or passive or civic spaces." *Id.* § 155.099(B)-

---

[3] The parties dispute where, exactly, the ordinances allowed UDBs, and the parties submitted competing maps. We express no opinion on which map correctly illustrated the 2023 ordinances' coverage.

[4] That is in contrast to a "primary use" location, which the § 155.054(D) Permitted Use Table limits to even fewer Zoning Districts.

[5] Those districts are the three residential districts, 2F, MF-1, and MF-2, and the six commercial/industrial districts, O-P, C-1, C-2, C-3, I-1, and I-2. Mansfield Code of Ordinances § 155.099(40)(a).

[6] As AOH emphasized to the district court, that could prevent a priest from approving a UDB at his church without the permission of the property owner (even if the property owner is entirely unrelated to the church).

(40)(b)(4)–(6).[7]

The ordinances never explained when the Department of Regulatory Compliance had to grant a Donation Box Permit, nor even how it would decide whether to grant one. The ordinances included a revocation process, *id.* § 116.03, and an appeal process for denials or revocations, *id.* § 116.04–05.[8] But the ordinances made no mention of the city's initial-decision process.

Additionally, the ordinances imposed joint and several liability on the operator and the property owner for maintenance, upkeep, and servicing of the box and donations and of the trash left around it. *Id.* § 116.03(A)(1)–(2); *see also id.* § 116.03(C) (deeming any violation a public nuisance); *id.* § 116.03(A)(4) (warning that more than one citation in a twelve-month period may lead to revocation of a permit). Violation of any part of that permitting scheme was a misdemeanor, and the city could levy a $2,000/day penalty on conviction of an operator for each violating UDB. OR-2287-23 § 5.

## B. AOH's Challenge to the Ordinances

AOH is a charitable organization dedicated to aiding children and single-mother families in need. AOH does so by, *inter alia*, operating three UDBs that run afoul of the ordinances. On the permitting scheme's taking effect, the city threatened enforcement against AOH for its failure to bring those UDBs into compliance with the permitting scheme. AOH responded by bringing a facial challenge against the ordinances, seeking declaratory and

---

[7] Those requirements do not exhaust the ordinance. The city imposes plenty more. *See* Mansfield Code of Ordinances § 155.099(B)(40)(b)(7)–(14).

[8] OR-2287-23 contains two sections demarcated § 116.03, "Maintenance" and "Revocation of Permit." For the sake of this opinion, we refer to Maintenance via § 116.03 and Revocation of Permit via § 116.04.

injunctive relief under 42 U.S.C. § 1983.

Shortly after suing, AOH moved for a temporary restraining order and a preliminary injunction. It alleged that the ordinances effectively banned all UDBs by preventing the public from seeing them and by excluding them from the majority, if not all, of the areas within the city where charitable solicitations were most effective. Further, AOH complained that the UDB ordinances covered "an unjustifiably overbroad area of Mansfield *and* g[a]ve Mansfield unbridled discretion to deny permits for donation bins even in the ostensibly available areas." Thus, the city had crafted a speech restriction both impermissibly narrowly tailored and unconstitutionally restraining of speech. The city responded by asserting that AOH could not meet the high burden for obtaining a preliminary injunction.[9]

Implicitly narrowing the facial challenge to an as-applied challenge, the district court ruled for AOH, concluding (1) that the ordinances were content-neutral but likely to fail intermediate scrutiny and (2) that AOH met the other preliminary injunction factors. Specifically, the court found that the ordinances failed intermediate scrutiny's narrow-tailoring requirement because (A) the zoning restrictions "equate[d] to UDBs being permitted in a minute fraction of the City," and (B) "the setback restrictions, permitting restrictions, consent requirements, and signage restrictions" were insufficiently supported by the City's evidence. Additionally, the court found that the ordinances gave the city "unbridled discretion to grant[] or deny donation box permits" because "nowhere in the Ordinance does it say that, if all requirements are met, the city must issue the applicant a permit."

---

[9] Pending the resolution of that motion, though, the city agreed not to enforce the ordinances against AOH.

No. 23-10656

The city filed an interlocutory appeal,[10] averring that the district court had improperly applied intermediate scrutiny, and AOH cross-appealed, claiming that the court had erred by not applying strict scrutiny.

## II.

In early 2024, after the parties briefed the appeal, the city enacted OR-2342-24 and OR-2346-24. Those ordinances updated the zoning requirements, reduced which streets the setback restrictions covered, eliminated the building-setback requirement, eased the permitting restrictions, broadened the consent requirement, and imposed new advertising restrictions. In other words, they addressed the supermajority of the district court's narrow-tailoring issues. Further, both ordinances expressly repealed and replaced "all ordinances of the City in conflict with" them. OR-2342-24 § 3; OR-2346-24 § 4.

Alerted to that development, this panel requested letter briefs asking whether the 2024 ordinances moot their interlocutory appeal and cross-appeal. Both AOH and the city contended that the new ordinances have no effect on the disposition of their appeals, but we read the ordinances differently. We conclude that the 2024 ordinances moot the appeals before us—though not AOH's entire case.[11]

The city contends that many of the ordinances' provisions did not change, keeping the appeal alive because those provisions remain subject to

---

[10] 28 U.S.C. § 1292(a)(1).

[11] *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394, 396 (1981) ("This, then, is simply another instance in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot. . . . [W]hen the injunctive aspects of a case become moot on appeal of a preliminary injunction" the case "must be resolved in a trial on the merits" not an appeal of the preliminary injunction.); *see also id.* at 397–98.

7

the district court's order.

Similarly, AOH explains that, despite the changes, Mansfield did not discontinue its challenged practices, nor did it give AOH the precise relief requested. So, under *Thomas v. Bryant*,[12] *New York State Rifle & Pistol Association v. City of New York* [*NYSRPA*],[13] and *Opulent Life Church v. City of Holly Springs*,[14] the appeal has not become moot. Specifically, AOH points to the amendments' failure to eliminate the zoning, setback, permitting, and signage restrictions and to the fact that AOH's UDBs still violate the new ordinances.[15]

True, AOH has not received the "precise relief" it requested, *NYSRPA*, 140 S. Ct. at 1526; the city likely will still enforce the 2024 ordinances' zoning restrictions, or their now-lessened setback requirements, against AOH. But contrary to AOH's suggestion, *NYSRPA* does not prevent us from finding the appeal moot. Instead, it supports that ruling. There, the Supreme Court remanded the gunowners association's appeal as moot after New York amended the law, even though the petitioners still "claim[ed] that they may not be allowed to stop for coffee, gas, food, or restroom breaks on their way to their second homes or shooting ranges outside of the city." 140 S. Ct. at 1526. The Court even held that the "change in the legal framework governing the case" mooted the appeal, *despite* that "the plaintiff may have some residual claim under the new framework . . . ." *Id.* (quoting *Lewis*

---

[12] 938 F.3d 134, 144 & n.21 (5th Cir. 2019).

[13] 140 S. Ct. 1525, 1526 (2020) (per curiam).

[14] 697 F.3d 279, 285 (5th Cir. 2012).

[15] AOH's CEO asserts in a declaration that its three ordinance-violating UDBs sit "between the building and the road so that they are visible to passersby and potential donors" and that they are within 500 feet of the restricted roads, both of which count as violations of the 2024 ordinances.

*v. Cont. Bank Corp.*, 494 U.S. 472, 482 (1990)).  Similarly, the city has dramatically changed the standards applicable to UDBs.  Though AOH "may have some residual claim," the district court is the proper place to flesh out that claim and to litigate its merits.

Our ruling also conforms to *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir. 2008).  There, in a slightly different procedural posture, we ruled that "the district court's . . . preliminary injunction directly caused the City to amend the offending portion of the Ordinance, thereby mooting [Dearmore's] case . . . ." *Id.* at 525.  The city has likewise amended its ordinances in response to the preliminary injunction, mooting the challenge to those ordinances.  That it has not amended the ordinances enough to satisfy AOH means the *case* has not become moot—unlike in *Dearmore*—but it still means that the *appeal* has.

## A.  Mootness Exceptions

Recognizing that we might decide that the appeal became moot when the city amended its ordinances, AOH contended in the alternative that Mansfield's actions present a classic case of voluntary cessation under *Opulent Life Church* and *Northeastern Florida Chapter of Associated General Contractors v. City of Jacksonville*, 508 U.S. 656 (1993).  Those two cases make clear that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" and, generally, a repeal of an unconstitutional ordinance "would not preclude [the city] from reenacting precisely the same provision if the District Court's judgment were vacated."[16]  So, when a city "repeat[s] its allegedly unlawful conduct," even if the ordinance "differs in certain respects

---

[16] *Assoc. Gen. Contractors*, 508 U.S. at 662 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

from" and "disadvantages [plaintiffs] to a lesser degree than the old one," the case is not moot. *Id.* at 662.

But AOH mistakes the procedural posture of those cases and their analyses' level of generality. *Associated General Contractors* and *Opulent Life Church*—and even the cases they rely on[17]—analyze mootness when the *case as a whole* has become moot.[18] Therefore, they do not bind our analysis of an interlocutory appeal's mootness while the case remains live.

Instead, we find *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666 (5th Cir. 2023), instructive. There, the district court had preliminarily enjoined the Navy's denial of the plaintiffs' religious exceptions to COVID-19 vaccines. During the appeal's pendency, though, the Navy formally rescinded its policies and announced its intention not to impose any COVID-19 vaccination requirements on servicemembers in the future. We dismissed the appeal and remanded, deciding that our court "need not consider [the capable of repetition yet evading review] exception" to mootness "because the issues Plaintiffs raise can still be litigated in the district court and appealed after a final

---

[17] *See, e.g.*, *Aladdin's Castle*, 455 U.S. at 287–88 (appeal following a trial).

[18] In *Associated General Contractors*, the Eleventh Circuit's final judgment vacated the summary judgment and permanent injunction for the contractors, held that the contractors lacked standing, and instructed the district court to dismiss the case. 508 U.S. at 659–60. Then, after the Supreme Court granted certiorari, the city repealed and replaced the ordinance with another ordinance riddled with the same constitutional issues. The Court ruled that the repeal-and-replace did not moot the case because the city had already "repeated its allegedly wrongful conduct." *Id.* at 662.

Nearly two decades later, our circuit applied *Associated General Contractors* in *Opulent Life Church*. There, the district court denied a preliminary injunction for the plaintiffs, who appealed, and the city, on the night before oral argument, "doubled down" on its allegedly unconstitutional behavior by passing an even more restrictive ordinance. 697 F.3d at 284–86. We held that the new ordinance, as an even greater infringement on the plaintiff, "may present an even weaker case for mootness than *Associated General Contractors*," concluding that the "*case* is not moot . . . ." *Id.* at 286 (emphasis added).

judgment, assuming they remain justiciable." *Id.* at 675. Then we explained that "the capable-of-repetition exception is inapplicable in those situations in which the issues underlying the moot appeal are *not* moot in the case remaining before the district court." *Id.* (cleaned up).

We face a similar situation. The city, like the Navy, has rescinded its infringing ordinances. The city, like the Navy, has announced a new policy less likely to infringe on the plaintiffs' rights.[19] And the district court, like the district court in *U.S. Navy SEALs 1-26*, has not entered any final judgment or issued a permanent injunction; instead, the parties filed an interlocutory appeal of a *preliminary* injunction while the district court retained jurisdiction over the underlying case. Therefore, as in *U.S. Navy SEALs 1–26*, the mootness exceptions do not apply, but "the mootness of this interlocutory appeal does not prevent the district court from ruling on any of Plaintiffs' claims that remain justiciable." *Id.*

If the parties' appeals came to us via a permanent injunction, or any other final judgment, *Associated General Contractors* and *Opulent Life Church* would control. But in both of those cases, the court looked to the underlying case to determine mootness. Here, the underlying case is still pending before the district court, so we look to *U.S. Navy SEALs 1-26* and apply its logic on the "capable of repetition yet evading review" exception to the voluntary cessation exception. Doing so, we conclude that the voluntary cessation exception to mootness does not apply here.

*       *       *       *       *

---

[19] Of course, we express no opinion on the merits of AOH's claims against the 2024 ordinances. We note, though, that a recent panel of our court upheld a similar ordinance under intermediate scrutiny. *See Nat'l Fed'n of the Blind of Tex., Inc. v. City of Arlington* [*NFB*], No. 23-100034, --- F.4th ---, 2024 WL 3434407 (5th Cir. July 17, 2024).

No. 23-10656

Regardless of any action we might take to affirm or vacate the preliminary injunction, it no longer has any real-life effect.[20]  The existing injunction operates against an almost-completely-repealed pair of ordinances, and an affirmance would not extend that injunction to the enforcement of the 2024 ordinances.[21]  Therefore, the appeal and cross-appeal are DISMISSED as moot.[22]

---

[20] *Cf. Thomas*, 938 F.3d at 144 ("A legislative remedy to a challenged law may moot a case pending appeal because courts can no longer enjoin the enforcement of a repealed law that has no effect.").

[21] We have not addressed AOH's cross-appeal that the district court used intermediate scrutiny when it should have applied strict scrutiny, *but see NFB*, 2024 WL 3434407, at *4–5 (holding that a donation  box law is facially content-neutral and applying intermediate scrutiny), because the cross-appeal is frivolous.  This Court, like all federal appellate courts, reviews not lower courts' opinions, but their *judgments*."  *Jennings v. Stephens*, 574 U.S. 271, 277 (2015) (citations omitted).  And it is well established that "[a] party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it."  *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 333 (1980) (citations omitted).

Still, AOH has done exactly that.  It has cross-appealed "for the sole purpose of making an argument in support of the judgment[,]" an action which we agree "is worse than unnecessary."  *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 439 (7th Cir. 1987) (cleaned up).  As we have long said, "[s]uch arguments should, instead, be included in the appellee's answering brief."  *Matter of Sims*, 994 F.2d 210, 214 (5th Cir. 1993).  Further, AOH raises no "adverse ruling collateral to the judgment on the merits[,]" *Deposit Guar. Nat'l Bank*, 445 U.S. at 335, which might present cross-appealable issue.  Still, because our finding of mootness means we lack jurisdiction to resolve any appeal of the preliminary injunction, we dismiss the cross-appeal as moot too.

[22] We do not vacate the injunction, though, because "vacatur of the lower court's judgment is warranted only where mootness has occurred through happenstance, rather than through voluntary action of the losing party."  *Houston Chron. Pub. Co. v. City of League City*, 488 F.3d 613, 619 (5th Cir. 2007) (cleaned up).